AO 106 (Rev. 06/09)  Application for a Search Warrant



FILED

SEP 1 5 2017

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Silver colored Apple iPhone – Model A1549,<br>IMEI 359229066665888 | )<br>)<br>)<br>)<br>)<br>) |

Case No. ▄▄▄▄▄▄▄

'17 MJ 3379

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 846 | Distribution of controlled substances and conspiracy to do the same |
| 21 U.S.C. §§ 952, 960 and 963 | Importation of controlled substances and conspiracy to do the same |

The application is based on these facts:
See Affidavit of Special Agent Prescilla Gonzales, which is hereby incorporated by reference and made part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Prescilla Gonzales, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __9/15/17__

_____
*Judge's signature*

City and state:  San Diego, CA

HON.  William V. Gallo
*Printed name and title*

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> Silver, Apple, iPhone
> Model A1549 IMEI No. 359229066665888
> **(Target Device)**

**Target Device** is currently in the possession of HSI, stored in an HSI evidence vault in San Diego, CA.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 1 to June 3, 2017:

a.   tending to indicate efforts to import cocaine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

d.   tending to identify travel to or presence at locations involved in the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

      f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

limited to, evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963.

## AFFIDAVIT

I, Prescilla Gonzales, being duly sworn, hereby state as follows:

### INTRODUCTION

1.     This affidavit supports an application for a warrant to search the following electronic device:

      a.     Silver, Apple, iPhone
            Model A1549 IMEI No. 359229066665888
            **(Target Device)**

as described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Section 841, 846, 952, 960, and 963.

2.     The Target Device was seized at the San Ysidro Port of Entry on June 2, 2017 after Alejandro Jesus Alvarez was arrested for attempting to import cocaine into the U.S. from Mexico. The Target Device is currently being stored in a Homeland Security Investigations (HSI) evidence vault located in San Diego, California.

3.     Based on the information below, there is probable cause to believe that a search of the Target Device will produce evidence of the aforementioned crimes, as described in Attachment B.

4.     The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; my review of documents and computer records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.  Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.  Date and times are approximate.

//
//

## EXPERIENCE AND TRAINING

5.     I am a federal "Law Enforcement Officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have been a Special Agent with the United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") since July 2010. Prior to HSI, I was an Immigration Enforcement Agent for approximately four years.  I am currently assigned to the Office of the Deputy Special Agent in Charge, San Ysidro, California ("DSAC/SY"). Currently, I am investigating narcotics smuggling and illegal distribution of drugs, by persons operating in Tijuana, Mexico and Southern California.   The drugs are smuggled into the United States through the Southern California land border Ports of Entry.

6.     I am a graduate of the Federal Law Enforcement Training Center (FLETC") Criminal Investigator Training Program ("CITP") and the Immigration and Customs Enforcement Special Agent Training ("ICESAT") course.

7.     As a federal law enforcement officer for approximately 11 years, I have received formal training, as well as extensive on-the-job training, relative to the investigation of federal crimes involving human smuggling, kidnaping/extortion, firearms smuggling, and narcotics smuggling. I have participated in investigations which involved the use of electronic surveillance techniques. I have monitored or overheard numerous calls or meetings between informants or undercover agents, firearms traffickers, drug traffickers and money launderers. I have investigated firearms trafficking, illicit narcotics, controlled substances, money laundering, wire fraud and other crimes that have resulted in arrests, indictments, and convictions.

## FACTS SUPPORTING PROBABLE CAUSE

8.     Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling

investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug smugglers will use cellular/mobile telephones to plan and coordinate their activities with co-conspirators, and will discuss matters including obtaining and registering a load vehicle, building a compartment, having a vehicle cross the border repeatedly to "burn" the license plates, recruiting load drivers, and arranging for the loading, transportation, and delivery of the illegal cargo.

b. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

c. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

d. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

e. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

f. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

g. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

9.    I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  This information can be stored

within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone.

10. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of cellular/mobile telephones which may identify other persons involved in narcotics trafficking activities.

11. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a.   tending to indicate efforts to import cocaine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

d.   tending to identify travel to or presence at locations involved in the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## Investigation Overview

12.    On June 2, 2017, Alejandro Jesus Alvarez ("ALVAREZ"), a United States Citizen, attempted to enter the United States from the Republic of Mexico at the San Ysidro Port of Entry, San Diego, California. ALVAREZ was the driver, registered owner, and sole occupant of a blue 2013 Hyundai Veloster  ("the vehicle") bearing California license plates.

13.    At approximately 12:58 a.m., a Customs and Border Protection (CBP) Officer was performing primary inspections when ALVAREZ, driving the vehicle, arrived at the officer's booth. The CBP officer asked ALVAREZ where he was going and ALVAREZ told the officer he was going home. After the CBP Officer received two negative customs declarations from ALVAREZ, the officer asked ALVAREZ to open his trunk. During the officer's inspection of the trunk, the officer lifted up the spare tire cover and observed multiple packages wrapped in black tape located where a spare tire would normally be placed. The CBP Officer closed the trunk and asked ALVAREZ again where he was going. ALVAREZ told the officer he was going to work at Costco located in San Diego. ALVAREZ told the officer the vehicle was his and he had owned it for six months. ALVAREZ was instructed to turn off the vehicle. ALVAREZ was then escorted to the security office.

14.    At approximately 1:00 a.m., a CBP officer was asked to utilize his human/narcotic dog "Gringo" for inspection on the vehicle. Gringo alerted to the smell of narcotics coming from the trunk area of the vehicle.

15.    At approximately 1:05 a.m., a CBP officer was assigned to conduct a Z-Portal scan of the vehicle. The officer examined the image of the vehicle and detected anomalies in the trunk's spare tire wheel well.

16.    During the secondary inspection a CBP Officer found nineteen (19) black tapped packages in the vehicle's spare tire wheel well. The officer later found an additional package located in the vehicle's right side rear quarter panel.  A CBP Officer removed a total of twenty (20) black tape packages. The packages contained a white

1  powdery substance, weighing approximately 25.04 kilograms (55.20 pounds), which
2  field tested positive for the characteristics of cocaine.

3      17.    ALVAREZ was arrested and charged with violation of Title 21 U.S.C.
4  Sections 952 and 960, Unlawful Importation of a Controlled Substance.

5      18.    ALVAREZ had the Target Device in his possession at the time he entered
6  the United States in the vehicle. He also had a phone charger in the vehicle. The Target
7  Device was seized and stored in evidence.

8      19.    Following ALVAREZ's arrest, the Target Device has remained in the
9  continuous custody of HSI. Specifically, the Target Device was stored in an HSI
10 evidence vault in San Diego, CA where it was secured with access limited to only
11 government personnel. The Target Device was sealed in plastic evidence packaging
12 and this sealed package is intact with no signs of any tampering. The Target Device
13 has remained in essentially the same condition as it was when seized on June 3, 2017.

14     20.    California Department of Motor Vehicle records for the vehicle reflect that
15 ALVAREZ and Enrique Alvarez (whom I know to be ALVAREZ's father) purchased
16 the vehicle on or about December 28, 2016, and registered it in both their names on or
17 about January 25, 2017. Border crossing records reveal that ALVAREZ has crossed
18 between Mexico and the United States at least forty-eight (48) times between February
19 15, 2017 and June 2, 2017 in the vehicle.

20     21.    On July 5, 2017, the Honorable William V. Gallo, Magistrate Judge,
21 authorized a search warrant (17MJ2237) for the Target Device. On July 12, 2017, agents
22 transported the Target Device to the Regional Computer Forensics Laboratory in San
23 Diego, California. Agents were notified by lab technicians of the limited capabilities to
24 unlock iPhone 6 phones (Target Device) with iOS operating systems above 10. The
25 Target Device was not analyzed and was ultimately returned to the evidence vault.

26     22.    On September 12, 2017, I learned that the Cyber Crime Center (C3)
27 located in Fairfax, Virginia has the technological capabilities to unlock the **Target**
28 **Device**.

6

**METHODOLOGY**

23.    It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24.    All forensic analysis of the data contained within the Target Device and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel

7

1 | conducting the identification and extraction of data will complete the analysis within
2 | ninety (90) days, absent further application to this court.

3 | **CONCLUSION**

4 |     26.    Based on all of the facts and circumstances described above, there is
5 | probable cause to conclude that ALVAREZ used the Target Device to facilitate
6 | violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963, from
7 | December 2016, when he first acquired the vehicle, until the date of his arrest, on June
8 | 2, 2017.

9 |     27.    Because the Target Device was promptly seized during the investigation
10 | of ALVAREZ smuggling activities and have been securely stored, there is probable
11 | cause to believe that evidence of illegal activities committed by ALVAREZ continues
12 | to exist on the Target Device.

13 |     28.    WHEREFORE, I request that the court issue a warrant authorizing law
14 | enforcement agents and/or other federal and state law enforcement officers to search
15 | the items described in Attachment A, and the seizure of items listed in Attachment B,
16 | using the methodology described above.

17 |

18 | I swear the foregoing is true and correct to the best of my knowledge and belief.

19 |
20 |
21 | Prescilla Gonzales
22 | HSI Special Agent

23 | Subscribed and sworn to before me this _/5_ day of September, 2017.

24 |
25 |
26 | The Honorable William V. Gallo
27 | United States Magistrate Judge

28 |

8

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Silver, Apple, iPhone
> Model A1549 IMEI No. 359229066665888
> (**Target Device**)

**Target Device** is currently in the possession of HSI, stored in an HSI evidence vault in San Diego, CA.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 1 to June 3, 2017:

a.   tending to indicate efforts to import cocaine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

d.   tending to identify travel to or presence at locations involved in the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

   f.  tending to place in context, identify the creator or recipient of, or establish
       the time of creation or receipt of communications, records, or data involved
       in the activities described above;

limited to, evidence of violations of Title 21, United States Code, Sections 841, 846,
952, 960, and 963.